IN UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CASE NO.: 3:24-CR-00034 |
| ) | |
| ) | JUDGE:  JAMES R. KNEPP II |
| vs. ) | |
| ) | |
| MICHAEL SCHERER ) | |
| ) | |

## MOTION TO SUPPRESS

Now comes Defendant, Michael Scherer who respectfully moves this Honorable Court to grant his Motion to Suppress. The search warrant executed in this matter was not supported by probable cause, and the subsequent search and seizure of all items confiscated is prohibited as fruit of the poisonous tree. Statements made by Defendant were also made without the proper advisements pursuant to *Miranda v. Arizona*. Assuming arguendo, that statements were made in a non-custodial setting, the voluntariness of Defendant's statements is in question, mandating their suppression. The reasons for this Motion are set forth more fully in the attached Memorandum in Support.

Wherefore, Defendant prays this Honorable Court, grant his Motion to Suppress.

Respectfully Submitted,

**PATITUCE & ASSOCIATES, LLC**

**By: /s/ Catherine Meehan**
Joseph C. Patituce (#0081384)
Catherine Meehan (#0088275)
Attorneys for Defendant
16855 Foltz Industrial Pkwy.
Strongsville, Ohio 44149
Phone: (440) 471-7784
Fax: (440) 398-0536
attorney@patitucelaw.com

1

# MEMORANDUM IN SUPPORT

## I. STATEMENT OF FACTS

In August of 2019, the FBI received a tip from a foreign law enforcement agency that a target website was accessed on May 5, 2019, by IP address 104.60.139.30. The IP address was registered to AT&T. On September 11, 2019, the government sent a subpoena/summons to AT&T and obtained the subscriber of the IP address. The Subscriber was identified as Michael Scherer, hereinafter Defendant. Defendant's address, phone number and email address were also provided.

The government did BMV records checks in November 2019 and June 2021. Physical surveillance of Defendant's residence occurred in January 2021 and July 2021. The surveillance only verified that Defendant resided at the residence in connection to the information received from AT&T. No illegal activity was observed.

A search warrant was obtained on July 28, 2021, which was executed at Defendant's residence on July 29, 2021. Defendant was directed to a vehicle outside his home and was questioned by Agents Amy Gloor and Alex Hunt. Multiple devices and electronics were seized and searched, which yielded Child Sexual Abuse Material (CSAM). An indictment was filed on February 7, 2024, charging Defendant with one count of Receipt and Distribution of Child Pornography in violation of 18 U.S.C. 2252(a)(2).

## II. LAW AND ARGUMENT

**a. Evidence seized in the search of Defendant's Residence must be suppressed as the affidavit failed to adhere to the constitutional requirements demanding probable cause.**

The Affidavit failed to set forth a substantial basis to support a determination that probable cause existed to search Defendant's residence and all his electronic devices that may contain evidence of child pornography. The Fourth Amendment to the United States Constitution states:

2

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

In reviewing warrants, the determination of the judge or magistrate "should be paid great deference by reviewing courts" and reviewed in a common-sense manner. *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). A totality of the circumstances analysis should be utilized in determining whether the magistrate had a substantial basis to believe the search would lead to evidence of criminal acts. *Id.* at 236, 238. "The job of the magistrate judge presented with a search warrant application is 'simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit…there is a fair probability that contraband or evidence of a crime will be found in a particular place." *U.S. v. Brown*, 828 F.3d 375, 381 (6th Cir. 2016), *citing Gates*, at 238. "There must, in other words, be a *nexus* between the place to be searched and the evidence sought." *Id.*, *citing U.S. v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). Conclusory statements are not sufficient. *Gates*, at 239, *see also Nathanson v. U.S.*, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933), *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Id*. There must be a "specific and concrete" connection as opposed to one that is vague or generalized. *Brown*, at 382. "[C]ourts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued" to ensure that magistrates do not abdicate their role, because "whether an affidavit establishes a proper nexus is a fact-intensive question resolved by examining the totality of the circumstances presented." *Gates*, at 239; *Brown*, at 382.

In this case, the affidavit in support of the search warrant of Defendant's residence and electronic devices, was devoid of information that would suggest Defendant possessed or distributed child pornography. In the affidavit, it is averred that in August 2019, the FBI received a tip from a Foreign Law Enforcement agency that on May 5, 2019, a user of IP address linked to Defendant, accessed a target website that has a focus on the facilitation of sharing child abuse material. The affidavit also indicated that the target website ceased operating in June 2019.

On September 11, 2019, a subpoena was issued to AT&T which identified Defendant by his name, address and phone number which was linked to the IP address subject to the August 2019 tip. The FBI conducted surveillance of Defendant's residence to verify that he was the person at the suspect premises, but this surveillance was conducted in January and July of 2021, seventeen months after the tip was received. Outside of the foreign law enforcement tip that Defendant's IP address accessed the target website in May of 2019, there is nothing within the search warrant to support probable cause that Defendant would be in possession of child exploitation material.

The search warrant was executed almost two years after the tip, and more than two years from the date where the Target IP address accessed the target website. In fact, the affidavit indicated that the target website ceased operations in June of 2019, which was less than one month after the access noted in the foreign agency tip. There is no further information within the affidavit that suggests multiple visits to the target website, what was viewed on the website, or that any material was downloaded or shared from the website. Mere access, on one occasion, to a website that ceased to exist less than thirty days from the access, is insufficient to establish probable cause that Defendant would be in possession of child pornography.

Additionally, Paragraph 16 of the affidavit described the target website as an active online forum "whose primary purpose was to be a board that was 'public, open and free, however, slightly

4

moderate(d) to avoid things that are harmful to the community and/ or members, here you can be happy, be yourself and can talk about anything, even controversial issues, but always respecting the rights of other members." Outside of affiant's generalized stated that the website was dedicated to the sexual exploitation of minor and/or prepubescent males, there is nothing concrete within the four corners of the document that suggest or can even demonstrate, what material, if any, was accessed by Defendant's IP address on May 5, 2019. Hypothetically, Defendant could have accessed the website, engaged in a conversation about controversial issues, but never shared or viewed sexual exploitation material. A mere hypothetical scenario is insufficient to establish probable cause.

Assuming arguendo, this Court were to determine access to the target website on one occasion is sufficient probable cause, the search warrant is still insufficient. "Stale information cannot be used in a probable cause determination." *United State v. Frechette*, 583 F.3d 374, 377 (6th Cir. 2009). Defendant recognizes that "child pornography is not a fleeting crime' and "is generally carried out in the secrecy of the home and over a long period.", and that courts have determined that certain amounts of time do not result in information in a warrant being stale. (See *U.S. v. Hampton*, where a ten-month delay in obtaining a warrant was not stale, U.S. v. Lewis, 605 F.3d 395 (6th Cir. 2010) where more than seven months was not stale, *U.S. v. Frechette*, 583 F.3d 374 (6th Cir. 2009) where sixteen months was not stale, *U.S. v. Lapsins*, 570 F.3d 758 (6th Cir. 2009) where nine months was not stale, and *U.S. v. Paull*, 551 F.3d 516 (6th Cir. 2009) where thirteen months was not stale.)

In this case, however, there was a tip in August of 2019, where the *only* access to a website occurred on one occasion in May of 2019. The target website ceased to exist in June of 2019. The search warrant was not secured and executed until July of 2021, which is twenty-six months after

the sole access to the target website. There was nothing further or additional within the affidavit to suggest that Defendant was in possession of or was distributing child pornography. The FBI was not able to obtain CSAM material or other files from Defendant's IP address. Outside of access, on one occasion to the target website, there is nothing else to suggest Defendant would be in possession of the same. As discussed *supra*, the website was operated as an online forum. There is no way, outside of mere speculation, to conclude that Defendant viewed, possessed, or downloaded CSAM when he accessed the target website, on one occasion. As such, the search warrant in this case lacked the necessary probable cause or was otherwise based on information that was stale and could not support the imposition of the search warrant. Any evidence seized in connection with the warrant must therefore be suppressed.

   b. **Statements by Defendant were obtained in violation of the Fifth Amendment right against self-incrimination and both the Fifth and Sixth Amendment right to counsel, made applicable to the States by the Fourteenth Amendment, and by Article I, Section 10 of the Constitution of the State of Ohio.**

Custodial statements taken from Defendant were done in violation of his Constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments of the Constitution of the United States, Article I Sections 10 and 14 of the Constitution of the State of Ohio, and procedural safeguards established by the United States Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); *State v. Buckholz*, 11 Ohio St.3d 24, 462 N.E.2d 1222 (1984).

In *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L. Ed. 2d 694 (1966), the United States Supreme Court held that the prosecution is barred from using statements, whether exculpatory or inculpatory, "stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." The court defined custodial interrogation as "questioning initiated by law

6

enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id*. To determine whether or not an individual is in custody for the purposes of Miranda the court must consider the circumstances surrounding the interrogation, and whether under those circumstances, a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave. *Thompson v. Keohane*, 516 U.S. 99, 112, 116 S. Ct. 457, 133 L. Ed. 2d 383 (1995).

In cases where "a defendant claims that a confession was coerced, the government bears the burden of proving by a preponderance of the evidence that the confession was in fact voluntary." *United States v. Johnson*, 351 F.3d 254, 260, 2003 U.S. App. LEXIS 23183 (6th Cir.). "In deciding whether the defendant's confession…was involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *Id*., 40-41, 358 N.E.2d 1051, *citing Brown v. U.S.* 356 F.2d 230, 232, (10th Cir.1966) *see also Dickerson v. U.S.*, 530 U.S. 428, 434, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000). "Any evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege." *Miranda* at 476.

In this case, statements by Defendant were made pursuant to unconstitutionally coercive and deceptive police tactics and, as such, should be suppressed. Defendant is in his sixties, has no prior experience with the criminal justice, and was subjected to questioning by agents outside his home during the execution of a search warrant. The agents routinely used cajolery to persuade Defendant into making incriminating statements, after several comments about needing an attorney and not wanting to say something that could be used against him later.

7

During the execution of the search warrant, Defendant was directed into a vehicle and was instructed on where he had to sit. He was in closed quarters with two field agents and was instructed to put on a mask. Defendant's freedom of movement was restricted, in a significant way. Within 90 seconds, Agent Gloor began asking Defendant personal identifying questions. Agent Gloor then advised the reason they were at his residence and began to explain they were executing a warrant at his house for child pornography. Agent Gloor told Defendant he did not seem surprised and told him she wanted to get his story, to "see what was going on" in his mind and his house. She immediately began questioning him about his internet use. About five minutes in Agent Hunt told Defendant he was free to go and was not under arrest. However, about six minutes into the conversation Agent Gloor asked Defendant a question and he responded "should I just say this in front of you, or a lawyer or something" Agent Gloor told him she wanted to give him a fair chance to explain himself and maybe help them with what he has "up there." Defendant responded by asking where he could get a lawyer.

Agent Hunt then jumped in and diverted the conversation and began talking about doing the search warrant, the fact that they would find things in his house, and that there are prosecutors aware of what is going on. Agent Hunt told Defendant that the prosecutors would want to know what they found, and the agents wanted to be able to paint Defendant in the best light possible. Agent Hunt continued to compliment Defendant on being so cooperative, which he indicated would be relayed to the prosecutor.

Agent Hunt discussed other types of cases that they handle including those where people kidnap kids and bury them in the back yard. Agent Hunt explained that they don't know if Defendant is that type of person, or how credible he is unless they can speak to him. Essentially Defendant was led to believe that his "cooperation" would give them a baseline of who he is and

8

if he is the type of person preying on children in the community. Defendant then indicated he did not want to say a bunch of stuff that would later be used against him. Agent Gloor interjected that they already know they're going to find stuff in his house. Both agents suggested that his cooperation, if it matched up with what was in the house, would go a "really really long way" with the prosecutors. On multiple occasions Defendant expressed his unwillingness to provide information that would be used against him later. The agents continued to divert to other topics, but then continued to press Defendant into making incriminating statements.

It is evident from this interaction from law enforcement that Defendant's statements were not freely given, rather were obtained by cajolery. Throughout the entire encounter, both Agents coaxed and flattered Defendant to persuade him to answer their questions. The agents when as far as telling him how cooperative he was being and how it would go a "really really" long way with the prosecutor. Coupled with the fact that Defendant, on no less than four occasions brought up speaking with a lawyer and stating his unwillingness to say things that could be used against him later, demonstrate that the continued cajolery by the agents is what ultimately led to his incriminating statements. Statements by Defendant were not made voluntarily, and the entirely of his interview was improper under Miranda. For these reasons, Defendant's statements must be suppressed.

### III. CONCLUSION

The government's evidence in this case was obtained by a warrant that wholly lacked probable cause. The information within the four corners of the affidavit was insufficient to establish that Defendant would be in possession of or was distributing CSAM. The only information within the affidavit that *may* implicate Defendant in illegal activity was stale. Almost twenty-seven months had lapsed from the time of the purported illegal activity to the time the search warrant was

obtained. Additionally, statements made by Defendant were not voluntary and were obtained by cajolery. All evidence obtained in the illegal search and seizure must be excluded as fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

    WHEREFORE, Defendant prays this Honorable Court grant his Motion to Suppress.

Respectfully Submitted,

**PATITUCE & ASSOCIATES, LLC**

By: **/s/ Catherine Meehan**
Joseph C. Patituce (#0081384)
Catherine Meehan (#0088275)
Attorneys for Defendant
16855 Foltz Industrial Pkwy.
Strongsville, Ohio 44149
Phone: (440) 471-7784
Fax: (440) 398-0536
attorney@patitucelaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing Motion to Suppress has been forwarded to all parties via the clerk's office electronic filing on the 1st day of November, 2024.

**/s/ Catherine Meehan**
Joseph C. Patituce
Catherine Meehan
Attorneys for Defendant