IN UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CASE NO.: 3:24-CR-00034 |
| ) | |
| ) | JUDGE: JAMES R. KNEPP II |
| ) | |
| vs. ) | |
| ) | |
| MICHAEL SCHERER ) | |
| ) | |

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**

Now comes Defendant Michael Scherer, by and through his undesigned counsel, and hereby submits his Reply to the Government's Response in Opposition to Defendant's Motion to Suppress. Defendant maintains that the warrant in this case was executed on stale information, lacking in probable cause and with no applicable good faith exception. Additionally, Defendant's statements were not freely given and instead were obtained by cajolery.

**A. The Search Warrant Affidavit**

    **a. Probable Cause**

In its Response in Opposition to Defendant's Motion to Suppress, the government suggests that probable cause existed as the affidavit "spelled out in great detail the criminal activity" and "also thoroughly described in great detail the child pornography accessed by the IP address ultimately tied to the defendant." Government Response Doc#18: Page ID#:56.

The government relies on *United States v. Fourde*, 440 F.3d 1065 (9th Cir. 2006) for the proposition that the mere status as a member of a website that contains child pornography images manifest an intention and desire to obtain illegal images. The government also relies on *United*

1

*States v. Wagers*, 452 F.3d 534 (6th Cir. 2006) to suggest that Defendant's access to the target site was sufficient to conclude that he likely downloaded, kept or otherwise possessed child pornography. In *Wagers*, the defendant challenged three search warrants that led to the seizure of child pornography on his home computer. The initial search warrant stemmed from an investigation where Homeland Security operated a sting and purchased subscriptions to, and visited websites, which agents later found images of child pornography. *Wagers* at 534. After obtaining billing records from the websites, the agents learned that Wagers had purchased subscriptions to the same websites. *Wagers* at 537. A search warrant was obtained and executed at his home, and child pornography was located on his home computer. *Wagers* at 537. Wagers challenged the search warrants and the Sixth Circuit Court of Appeals determined probable cause existed. The court reasoned that its decision was consistent with sistering circuits that have found "evidence that a person has visited or subscribed to websites containing child pyrography supports the conclusion that he has likely downloaded, kept, and otherwise possessed the material." *Wagers* at 540 citing *United States v. Martin*, 426 F.3d 68, 77 (2nd Cir. 2005), *United States v. Froman*, 355 F.3d 882, 890-891(5th Cir. 2004).

The instant matter is distinguishable from the caselaw cited by the Government. Each case cited by the government deals with websites that contain child pornography. The difference here is that the target website merely has the ability to lead a user to access to child pornography. The search warrant affidavit in this case references the "Target Website" as an "online forum whose primary purpose was to be a board that was 'public, open and free, however, slightly moderated(d) to avoid things that are harmful to the community and/or members, here you can be happy, be yourself and can talk about anything, even controversial issues, but always respecting the rights of other members.'" Doc. # 18-1 PageID#: 74 And while the affiant claimed that the website was

2

dedicated to the sexual exploitation of minor and/or prepubescent males, nothing within the affidavit reflects personal knowledge of what the website consisted of. In fact, the tip in this matter was received in August of 2019, and the website ceased operations in June of 2019. In other words, the affiant was unable to access the Target Website to verify its contents- as it no longer existed. Yet, the affiant averred that the child pornography images and videos were trafficked through this chat site via the posting of web links within forum messages. The links allowed users to navigate to another website where imagines and videos were stored, in order to download the images of videos. Doc# 18-1 PageID#: 76

    These statements cannot amount to probable cause that child pornography would be located on Defendant's property. First, the Target Website can hardly be considered a website that "contains child pornography." In paragraph 16 of the affidavit, the purpose of the website is clearly defined as active online forum. Doc# 18-1, PageID#: 74. Likewise, in paragraph 19, the process of how to obtain and view the illegal material was spelled out – a user would have to engage in a public or private chat and then navigate to a separate website after clicking on a posted web link (if the person you are communicating with posted a link to follow). Doc#18-1, PageID#: 19. In other words, a person visiting the target website, would have to do more than merely access the website to possess or download child pornography. The visitor would have to engage in the right private or public chat, and then navigate, via a web link, to another website, such as a file-hosting website, to download images or videos.

    There is nothing within the affidavit that suggests what forum, if any, Defendant engaged in, if he clicked on any weblinks with forums that he engaged in, or if he navigated to a file-hosting website to download any videos or images. In other words, there is nothing within the affidavit that suggests that Defendant would be in possession of child pornography. "Possession is defined

as 'the holding or having something (material or immaterial) as one's own, or in one's control." *U.S. v Tucker*, 305 F.3d 1193. The affidavit here falls short of establishing Defendant would likely be in possession of child exploitation material. Simply accessing a website that *can* lead to another website where you are able to access and download child exploitation materials is insufficient to establish probable cause.

The circumstances here are clearly distinguishable from *Wagers* where the defendant had subscriptions to multiple cites that contained child pornography, and the agents obtained subscriptions for the same sites and located illicit content therein. In this case, the government could not even access the website that Defendant visited on one occasion, because it no longer existed at the time of the tip. Defendant's access to a website that may lead the user to child exploitation material, depending upon who you chat with in a forum, is not the same as the circumstances in *Wagers*.

Additionally, the information about the Target Website was outside the personal knowledge of the affiant. As discussed supra, the website no longer existed at the time the tip in this case was received. Because the affiant could not visit the website to verify its contents, the affiant instead compared the Target Website to a different website, "Playpen" in order to opine that probable cause existed for any used who accessed the /Target Website, because that meant they "at a minimum, knowingly accessed the target website with intent to view child pornography, or attempted to do so." Doc. 3 18-1 PageID#: 80. There is no evidence that Defendant visited the "Playpen" website. The assumption that the information contained therein was the same as that of the Target Website is pure speculation. This should not be sufficient probable cause to search Defendant's premises and devices.

### b. Staleness

The government maintains that the information in the affidavit was not stale and cites various cases that have found no issue with three-to-five-year delays. While Defendant recognizes that child pornography is not a fleeting crime and is evaluated differently since it is generally carried out in the privacy and security of the home over longer periods of time, he maintains the circumstances of his particular case would render the information stale. Staleness is accessed by "the nature of the information, the nature and characteristics of the suspected criminal activity, and the likely endurance of the information." *U.S. v. Morales-Aldahondo*, 524 F.3d 115(1st Cir. 2008).

In *Morales-Aldahondo*, the defendant challenged staleness of a warrant which was executed more than three years after his purchases of access to various child pornography sites. *Morales-Aldahondo* at 117. The First Circuit concluded the information was not stale since the affidavit provided support that customers of child pornography sites don't quickly dispose of their cache. *Morales-Aldahondo* at 119.

Similarly, in *United States v. Eberle*, 266 Fed.Appx. 200 (3rd Cir. 2008), the court rejected a staleness argument for a three-and-a-half-year delay. In *Eberle*, the government received a tip in August 2004, that child pornography was uploaded to the Yahoo! website in September of 2001. *Eberle* at 201. Additional investigation led to George Eberle and a search warrant was obtained for his computer equipment and computer-related documentation and manuals. *Eberle* at 202. A search of the computer yielded no illicit materials. In March of 2005, T.S. made a report that her half-sister, the defendant, Alesha Eberle, filmed her being sexual assaulted by Mr. Eberle and that she took various photographs of her in various stages of undress. At the time T.S. was twelve years old. *Eberle* at 202. With this information officers obtained a search warrant for the Eberles' residence including documents pertaining to or depicting nude children and it contained

information regarding the use of media devices to save files and images and how perpetrators are likely to retain images of children engaged in sexual activity. *Eberles* at 203. A search of the computer yielded 66 images of child pornography. The defendant challenged the affidavit as stale, which was rejected by the court. The Third Circuit concluded that individuals tend to protect and retain child pornography for long periods of time as it is illegal and difficult to obtain. Additionally, the court noted that a covert phone call between T.S. and the defendant indicated the defendant's continuing interest in child pornography, which supported a belief that defendant still possessed it at her residence. *Eberles* at 206.

      Similarly, the Tenth Circuit in *United States v. Riccardi*, 405 F.3d 852, found that a five-year delay was not stale. In *Riccardi* the Tenth Circuit determined that a five-year-old kinos receipt was not stale when it was considered in context with the other information in the affidavit. *Riccardi* at 860-861. The court reasoned that the fiver-year-old kikos receipt demonstrated that the defendant had the desire and ability to convert polaroid photos in digital format, and coupled with the duration of his harassment and solicitation of minors, the existence of sexual explicit pictures of minors nearby, the screen names and the observation that possessors often keep electronic copies was enough to establish probable cause.

      The significant difference between all of the cases cited by the government, and the instant matter, is that in all these cases there was some sort of child pornography located before a warrant was obtained for a further search. The courts have been disinclined to find staleness three to five years later, but the circumstances are significantly different. In *Morales-Aldahondo*, information in the affidavit spelled out how the defendant purchased child pornography years before the warrant. In *Eberles* child pornography was uploaded onto a Yahoo! server, which was later linked to the defendant years later. In *Riccardi*, there was again, actual child pornography located, and

6

when coupled with a five-year-old Kinkos receipt, it established probable cause for a subsequent search.

In this case, the government did not have any information that child pornography was uploaded or located. Agents were unable to obtain illicit material from Defendant's IP address, nor was the tip one suggested Defendant either downloaded or uploaded child pornography. The sole tip in this matter was the someone from an IP addressed linked to Defendant, accessed a target website. At the time of the tip and investigation, the website was no longer in operations. The affidavit included information that was learned from consultation with FBI Agents.

The government argues that Defendant took steps to access a website known to contain child pornography and did in fact contain child pornography. However, a review of Ex. 1 at ¶ 24-26 reveals that the affiant was comparing the target website to another website that it believed was similar. Doc#18-1, PageID#80. Those paragraphs in the affidavit are wholly irrelevant to the circumstances here and have nothing to do with Defendants access to the target website. Evidence that Defendant accessed a target website, without more, over two years before a warrant was obtained, does not suggest that he was likely to possess child pornography. As such, Defendant's Motion to Suppress must be granted.

c. **Good Faith**

In certain situations, law enforcement will have reasonable grounds to believe that a warrant was properly issued and will have acted in good faith by relying upon the warrant. *United States v. Leon,* 468 U.S. 897, 922-23, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). "Courts presented with a motion to suppress claiming a lack of probable cause must ask 'whether a reasonably well rained officer would have known that the search was illegal despite the magistrate's decision." *United States v. White*, 874 F.3d 490 (6th Cir. 2017). "Only when the answer is 'yes' is suppression

appropriate." *White* at 496. "An affidavit is so lacking in indicia of probable cause that no reasonable officer would rely on the warrant has come to be known as the 'bare bones' affidavit." *White* at 496.

> A bare-bones affidavit is a conclusory affidavit, one that asserts 'only the affiant's beliefs that probable cause existed. It provides nothing more than a mere 'guess that the contraband or evidence of a crime would be found,', either 'completely devoid' of facts to support the affiant's judgment that probable cause exists, or 'so vague as to be conclusory or meaningless.

In this case, the affidavit consisted of suspicion and beliefs that Defendant possessed child pornography. The affiant concluded that Defendant must have accessed child pornography simply by visiting a target website on one occasion. Nothing else within the affidavit remotely suggests that Defendant actually accessed illicit material. At the time of the investigation the website was no longer operational to verify the type of content available. Because of this fact, the affiant was forced to compare the target website to another known cite Playpen. In comparing the Target Website to "Playpen," the affiant made a blanket assertion that "any user who accessed target website has, at a minimum, knowingly accessed the target website with intent to view child pornography or attempted to do so." Doc#18-1, PageID#80.

Yet, Agents were unable to obtain information that child pornography was uploaded or download by Defendant or from his IP address. Simply put, agents acted on a vague suspicion that material would be located at Defendant's residence. A reasonably prudent officer would not find on the face of the affidavit and warrant, sufficient probable cause to search Defendant's home and electronic devices. Therefore, the good faith exception does not apply, and the evidence must be suppressed.

8

### B. Defendant's Statements

Statements made by Defendant were not voluntary and must be suppressed. Custodial interrogation is more than questioning by an officer when a person has been taken into custody and has been defined to include when the person is "otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966).

In this case Defendant was removed from his home and escorted to an agent's vehicle outside where he was questioned by two agents. While he was told he was free to leave, at later points he asked if he could go back inside and was unable to do so as the agents coerced him into talking further. Instead, the agents continued to press and use impermissible tactics to gain admissions from Defendant. Defendant maintains that his statements were coerced, and as such the government bears the burden to prove that his confession was in fact voluntary. *United States v. Johnson*, 351 F.3d 254, 260, 2003 U.S. App. lexis 23183 (6th Cir).

Agents continued to question Defendant after countless comments about needing any attorney and a desire to not say anything that could be used against him later. On several occasions agents led Defendant to believe his cooperation would go a long way with the prosecutors who would ultimately determine if charges would be filed. The agents continued to coax and flatter Defendant into answering their inquiries and obtaining incriminating statements. These tactics invalidate the voluntariness of all statements made. As such, Defendant's statements must be suppressed.

For the forgoing reasons and those previously stated in Defendant's Motion to Suppress, this Honorable Court should grant Defendant's Motion and exclude any evidence obtained from the execution of the faulty search warrant, and all statements made by Defendant.

WHEREFORE, Defendant prays this Honorable Court issue an ordering granting his Motion to Suppress.

        Respectfully Submitted,

**PATITUCE & ASSOCIATES, LLC**
**By: /s/ Catherine Meehan**
Joseph C. Patituce (#0081384)
Catherine Meehan (#0088275)
16855 Foltz Industrial Pkwy.
Strongsville, Ohio 44149
Phone: (440) 471-7784
Fax: (440) 398-0536
attorneymeehan@patitucelaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing Reply to Government's Response in Opposition to Defendant's Motion to Suppress has been forwarded to all parties via the clerk's office electronic filing on the 3rd day of January, 2025.

**/s/ Catherine Meehan**
Catherine Meehan
Attorney for Defendant